IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUADREY SALAAM-ROANE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 17-1359-RGA |
| | : | |
| CONNECTIONS CSP, et al., | : | |
| | : | |
| Defendants. | : | |

Quadrey Salaam-Roane, Wilmington, Delaware; Pro Se Plaintiff.

Dana Spring Monzo and Karine Sarkisian, White & Williams, Wilmington, Delaware;
Counsel for Defendants.

**MEMORANDUM OPINION**

February 8, 2021
Wilmington, Delaware

/s/ Richard G. Andrews
**ANDREWS, U.S. District Judge:**

Plaintiff Quadrey Salaam-Roane, a former inmate at Howard R. Young

Correctional Institution in Wilmington, Delaware, filed this action pursuant to 42 U.S.C.

§ 1983 alleging violations of his constitutional rights and raising claims under state law.[1]

(D.I. 1).  Defendants are Connections CSP and Mitchell White.  Plaintiff appears *pro se*

and has been granted leave to proceed *in forma pauperis.*  (D.I. 6).  Before the Court is

Defendants' motion for summary judgment.  (D.I. 63).  Briefing is complete.

## I.      BACKGROUND[2]

On August 10, 2016, Plaintiff underwent a dental evaluation, and he was advised

by the dental provider it was necessary to extract tooth 9 due to necrotic pulp with

extensive abscess or cyst.  (D.I. 64-1 at 26).[3]  Plaintiff refused extraction and stated that

he wanted to be treated by his outside dentist.  (*Id.*).

Plaintiff's affidavit states that he submitted sick call slips around May 1, 2017 with

complaints of extreme tooth pain and facial swelling, but he was not seen until June 1,

2017 when he persuaded a correctional officer to call medical.  (D.I. 39).  Plaintiff states

in his affidavit that he was called to medical and seen by Defendant Mitchell A. White, a

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived
him of a federal right, and the person who caused the deprivation acted under color of
state law.  *West v. Atkins,* 487 U.S. 42, 48 (1988).

[2] The facts are construed in favor of Plaintiff, the non-moving party.

[3] References to the records at D.I. 64, when citing to particular pages, refer to the
pagination in the headers.

physician's assistant.[4]  (*Id.*).  Plaintiff states in his affidavit that White did not believe Plaintiff's complaints that his tooth was infected and told Plaintiff that he thought someone had hit Plaintiff in the face.  (*Id.*).  The affidavit states that White sent Plaintiff back to his housing unit and Plaintiff remained in severe pain for another month.  (*Id.*).

On June 5, 2017, Plaintiff presented to medical with facial swelling and provided a history that he was hit in the cheek with a ball while playing handball.  (D.I. 64-1 at 25).  Plaintiff was seen by RN John Bollati who prescribed ibuprofen for pain.  (*Id.*)  On June 12, 2017, Plaintiff submitted a sick call slip for dental pain and facial swelling.  (D.I. 64-9 at 3).  He was seen by RN Bollati on June 14, 2017. (D.I. 64-1 at 25).  Records state that Plaintiff's upper jaw was visibly swollen and his teeth had observable decay.  (*Id.*). Plaintiff was scheduled to see dental and told to return to sick call if his symptoms worsened.  (*Id.*).  White was notified of the findings, and the next day he prescribed Augmentin (*i.e.,* antibiotic) and ibuprofen.  (*Id.*).

Plaintiff was seen by a dentist on June 16, 2017.  (*Id.* at 24).  Examination revealed an abscess at teeth 10/9.  (*Id.*).  Plaintiff provided a history of root canal treatment, a crown, ongoing issues with the area and stated that he had been scheduled to have the area looked at prior to his incarceration.  (*Id.*).  The dentist informed Plaintiff that teeth 9/10 should be considered for extraction and that even with treatment the teeth could be lost.  (*Id.*).  Plaintiff indicated that he would like to keep the teeth.  (*Id.*).  He was schedule for a reevaluation of the abscess area.  (*Id.*).

---

[4] Plaintiff's medical records do not reflect a June 1, 2017 medical visit with White.  The records indicate that on May 30, 2017, Plaintiff received his annual tuberculosis exam and the results were read on June 1, 2017.  (D.I. 64-1 at 25).

Plaintiff's teeth were cleaned on June 19, 2017.  (*Id.*).  On June 21, 2017, he refused the prescribed Ibuprofen for pain.  (*Id.*).  On June 26, 2017, Plaintiff presented at sick call with tooth pain and indicated that he was ready to have the tooth extracted. (*Id.*)  He was given ibuprofen and a course of antibiotics and scheduled for a reevaluation.  (*Id.*).

On June 30, 2017, Plaintiff was placed in the infirmary following an examination which showed swelling moving towards his eye and a consultation with the dental director.  (*Id.*).  Plaintiff received treatment for an abscess on the right side of his face due to infected upper teeth; he remained in the infirmary for several days until his discharge on July 4, 2017.  (*Id.* at 19-24).  On July 3, 2017, Plaintiff's two front teeth were extracted due to dental abscess.  (D.I. 56-8 at 3, ¶¶ 7-8; D.I. 64-1 at 21).  The extractions were performed after discussing the risks, benefits, alternatives, and possible complications with Plaintiff, who consented to the removal.  (*Id.*).  Upon discharge Plaintiff was prescribed another course of antibiotics, probiotics, and pain medication.  (D.I. 64-1 at 19-20).

Plaintiff was seen by White on July 7, 2017 for a follow-up reevaluation of the incisions and drainage sites and the extractions.  (*Id.* at 19).  Plaintiff asked to change his current medication and re-start the hydrocodone for his pain.  (*Id.*). White changed the pain medication and continued Plaintiff on antibiotics.  (*Id.*). Plaintiff's stitches were removed on July 10, 2017.  (*Id.*).  Examination that day showed the continued presence of pus and the need for another incision and drainage.  (*Id.*). When Plaintiff saw the dentist on July 11, 2017, notes indicate that Plaintiff still had intraoral palatal swelling and buccal vestibule swelling.  (*Id.* at 18).  The dentist

recommended that Plaintiff see an outside provider regarding a cyst/lesion.  (D.I. 64-1 at 19; D.I. 64-6 at 4).

On July 31, 2017, Plaintiff presented to sick call with complaints of dental pain and Plaintiff was referred to "Dental." (*Id.*).  On August 7, 2017, Plaintiff again presented to sick call and complained of facial swelling; the nurse told him he would be scheduled to see "dental and a medical provider" the next day.  (*Id.*).  On August 8, 2017, the dentist saw Plaintiff for follow-up of the anterior maxillary cyst.  (*Id.* at 17-18).  It was noted that Plaintiff was scheduled for an outside consult, but the dentist determined that Plaintiff needed to be seen immediately and Plaintiff was transferred to the Christiana Hospital emergency room in Wilmington, Delaware for evaluation of his dental condition of a lesion/cyst that was not responding to antibiotic treatment.  (D.I. 64-1 at 17-18; D.I. 64-5 at 3-10).  Plaintiff was diagnosed with an abscess and Christiana Hospital instructed Plaintiff to follow up with the maxillofacial surgeons.  (*Id.* at 6).

Plaintiff present to the hospital on August 18, 2017 and underwent surgery to remove an anterior maxillary cyst.  (D.I. 64-1 at 16; D.I. 64-6 at 3-20).  Following the procedure, Plaintiff returned to the prison infirmary where his condition was monitored until August 23, 2017.  (D.I. 64-1 at 14-16).  While there, Plaintiff was seen by White on August 22, 2017, but Plaintiff refused to be examined or to answer any questions about his condition because he had been told he would be discharged from the infirmary on August 21, 2017, but he was still there.  (*Id.* at 14).  White observed decreased swelling and made some medication changes.  (*Id.*).  Plaintiff had follow-up appointment with the outside physicians in August and September 2017.  (*Id.* at 12-13).  Plaintiff's medical

records indicate that he received pain medication and antibiotics throughout treatment of his dental condition.  (D.I. 64-1 at 12-25; 64-6 at 3-20; 64-8 at 3-5, 6-12).

Plaintiff was seen by White on September 12, 2017, who noted that Plaintiff was healing well.  (*Id.* at 12).  Plaintiff was cleared for housing in the general population. (*Id.*).

Plaintiff alleges that Defendants were deliberately indifferent to his serious dental and medical needs in violation of the Eighth Amendment and he raises dental and medical negligence claims against Connections.  Defendants move for summary judgment on the grounds that: (1) Plaintiff failed to exhaust his administrative remedies as is required under the Prison Litigation Reform Act; (2) Plaintiff has failed to establish that Defendants were deliberately indifferent to his serious dental and medical needs; (3) Plaintiff's dental negligence claim is not supported by an expert; and (4) Plaintiff failed to attach an affidavit of merit or disclose an expert opinion for any potential medical negligence claim.  (D.I. 64).

## II.   LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  A dispute is "genuine" only if the evidence is such that a reasonable jury could return a

verdict for the non-moving party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49

(1986).

## III.     DISCUSSION

### A.       Deliberate Indifference to Serious Dental/Medical Needs

Defendants move for summary judgment on the grounds that Plaintiff failed to

establish an Eighth Amendment claim of deliberate indifference by Connections or its

staff, the claims against White fail for his lack of personal involvement, and Plaintiff

failed to establish that Connections maintains a policy, practice, or custom that caused

the alleged constitutional harm to Plaintiff.

Plaintiff's opposition to Defendants, motion for summary judgment consists solely

of argument and is not accompanied by a sworn affidavit or signed under penalty of

perjury.  Plaintiff did not cite to the record or provide any supporting evidence for

consideration by the Court.  Instead he argues, without specific cites to the record, that

"the evidence entered into the court as my Discovery and all other records of my

grievances, medical records  . . . proves that without a doubt Mitchell White . . . caused

permanent mental and physical damage, by making a personal decision to send me

back to my cell without any care."  (D.I. 69 at 3).  "[T]he court is not obliged to scour the

record to find evidence that will support a party's claims."  *Perkins v. City of Elizabeth*,

412 F. App'x 554, 555 (3d Cir. 2011); *see Holland v. New Jersey Dep't of Corr.*, 246

F.3d 267, 285 (3d Cir. 2001).

The Eighth Amendment proscription against cruel and unusual punishment

requires that prison officials provide inmates with adequate medical care.  *Estelle v.*

*Gamble*, 429 U.S. 97, 103-05 (1976).  In order to set forth a cognizable claim, an inmate

must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prisoner has no right to choose a specific form of medical treatment. Treatment is presumed to be proper, absent evidence that there was a violation in the standard of care. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017).

A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 10-05. "Unlike the deliberate indifference prong of an adequacy of care claim (which involves both an objective and subjective inquiry), the deliberate indifference prong of a delay or denial of medical treatment claim involves only one subjective inquiry--since there is no presumption that the defendant acted properly, it lacks the objective, propriety of medical treatment, prong of an adequacy of care claim." *Pearson*, 850 F.3d at 537. "Absent that objective inquiry, extrinsic proof is not necessary for the jury to find deliberate indifference in a delay or denial of medical treatment claim." *Id.* All that is needed is for the surrounding circumstances to be sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors." *Id.*

Finally, when a plaintiff relies upon a theory of respondeat superior to hold a corporation such as Connections liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del.

1992).  To establish that Connections is directly liable for the alleged constitutional violations, Plaintiff "must provide evidence that there was a relevant [Connections] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]."  *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). Assuming the acts of Connections' employees have violated a person's constitutional rights, those acts may be deemed the result of a policy or custom of the entity for whom the employee works, thereby rendering the entity liable under § 1983, where "the inadequacy of existing practice [is] so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."  *See Natale*, 318 F.3d at 584.

"'Policy is made when a decisionmaker possessing final authority to establish policy with respect to the action issues an official proclamation, policy or edict.'" *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)) (cleaned up). Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is "so permanent and well-settled as to virtually constitute law."  *Id.*

There is no dispute that Plaintiff had a serious dental condition.  Plaintiff argues that White's refusal to treat his condition when discovered resulted in the extraction of two teeth and an oral infection which resulted in surgery.  Plaintiff argues, without evidentiary support, that if White had not refused treatment, Plaintiff would not have developed an infection, been removed from general population, and taken from HRYCI to Christiana Hospital and returned to the HYRCI infirmary following surgery.

8

Plaintiff does not acknowledge that his medical records discuss dental issues as early as August 10, 2016.  The record evidence is that when Plaintiff was seen by White on June 1, 2017, no treatment was provided based upon White's observation that the swelling was due to Plaintiff's being hit in the face and not because of an infected tooth.[5]  (D.I. 39).  Notably, when Plaintiff presented to medical a mere four days later, Plaintiff provided a similar history that he was playing handball and was hit in the cheek with a ball.  Plaintiff was treated for facial swelling, and Plaintiff had no complaints of an infected tooth.  From that point on Plaintiff was seen by either medical or dental personnel for his numerous complaints.  As reflected in the medical records, White either saw Plaintiff, ordered medications, or ordered labs for Plaintiff's dental/medical care and treatment on June 15, July 7, August 11, August 22, September 12, and October 17, 2017.  The undisputed evidence of record is that even assuming White did not provide Plaintiff treatment on June 1, 2017, Plaintiff received continuous medical and dental treatment and care for his condition through numerous visits with dental and medical staff, stays in the infirmary, outside hospitalizations, and referrals to outside physicians.  There is no evidence that medical personnel violated any standard of care.  While Plaintiff may now disagree with the extraction of his two teeth, that disagreement does not rise to the level of a constitutional violation.  Notably, the record evidence is that Plaintiff was advised the of the extraction procedures and consented to the procedures.

---

[5] Defendants argue there is no evidence that Plaintiff was seen by White on June 1, 2017.  It is true that there is no entry in the medical records showing that Plaintiff and White had any interaction on that date.  (D.I. 64-1 at 25).  Plaintiff's affidavit says otherwise and thus is accepted for summary judgment purposes.

Finally, Plaintiff's position is that Connections has a custom of "treating abscesses, followed by extractions, then everything else" and does not take inmates' toothaches seriously.  (D.I. at 1 at 6).  To the contrary, the record evidence is that Plaintiff was consistently provided dental/medical care and treatment for his conditions and that Connections sought outside specialist care for Plaintiff's dental/medical issues. Given that Plaintiff failed to produce evidence of an Eighth Amendment violation or that a violation was caused by Connections' policy or custom, summary judgment is proper on behalf of Connections.   "To state a claim against a private corporation providing medical services under contract with a state prison system, a plaintiff must allege a policy or custom that resulted in the alleged constitutional violations at issue." *Palakovic v. Wetzel,* 854 F.3d 209, 232 (3d Cir. 2017); *see also Fields v. Delaware Dep't of Corr.*, 787 F. App'x 796, 799 (3d Cir. 2019) (summary judgment proper for corporate medical provider where there is no evidence of an Eighth Amendment violation, let alone a violation caused by medical provider's policy or custom).

Given the evidence of record, no reasonable jury could find that Defendants were deliberately indifferent to Plaintiff's serious medical needs in providing treatment or by reason of an intentional delay or denial of medical care on the claims raised under 42 U.S.C. § 1983.

### B.      Dental/Medical Negligence

Connections moves for summary judgment on the dental/medical negligence claims on the ground that Plaintiff failed to support the claims by expert testimony as required under Delaware.[6]

Under Delaware law, Plaintiff must support his dental malpractice allegations by expert medical testimony.  *See Ashley v. Kronfeld*, 1997 WL 398927, 696 A.2d 396 (Del. 1997) (table) (court properly dismissed dental malpractice claim where inmate could not support allegations by expert medical testimony); *Root v. Stout*, 1984 WL 484521 (Del. Super. Jan. 4, 1984) (plaintiff needs expert testimony for the purposes of supporting allegations of dental negligence).  He did not obtain any such evidence. The dental malpractice claims are not supported by expert testimony and, therefore, Connections' motion for summary judgment will be granted on this claim.

To the extent Plaintiff raises a medical negligence claim, the claim is governed by the Delaware Health Care Negligence Insurance and Litigation Act.  18 Del. C. §§ 6801-6865.  When a party alleges medical negligence, Delaware law requires the party to produce an affidavit of merit with expert medical testimony detailing: (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury.  *Bonesmo v. Nemours Foundation*, 253 F. Supp. 2d 801, 804 (D. Del. 2003); 18 Del. C.§ 6853.  Plaintiff did not submit an affidavit of merit as to each defendant signed by an expert witness at the time he filed his Complaint.  *See* 18 Del. C. § 6853(a)(1).  Therefore, the claim will be dismissed.

---

[6] All claims against White other than the § 1983 claim were earlier dismissed.  (*See* D.I. 41 & 42).

## IV.    CONCLUSION

Based upon the above discussion, the Court will grant Defendants' motion for

summary judgment.[7]  (D.I. 63).

An appropriate order will be entered.

---

[7] The Court does not address the issue of exhaustion as summary judgment is appropriate on other grounds.